UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 11-172-GWU


TRAVIS G. MCKNIGHT,                                                         PLAINTIFF,


VS.                                    **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.


## INTRODUCTION

Travis McKnight brought this action to obtain judicial review of an administrative decision on his application for Supplemental Security Income (SSI). The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions  .  .  .  or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that McKnight, a 31-year-old former restaurant host and data entry clerk with a high school education, suffered from impairments related to degenerative disc disease of the lumbar spine with chronic lower back pain, fibromyalgia, chronic obstructive pulmonary disease and depression.  (Tr. 20, 25).  Despite the plaintiff's impairments, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work.  (Tr. 22).  Since the claimant would be able to return to his past relevant work as well as perform a significant number of other jobs, he could not be considered totally disabled.  (Tr. 25-26).  The ALJ based this decision, in part, upon the testimony of a vocational expert.  (Tr. 26).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence.  However, the

current record also does not mandate an immediate award of SSI.  Therefore, the court must grant the plaintiff's summary judgment motion, in so far as it seeks a remand of the action for further consideration and deny that of the defendant.

The hypothetical question initially presented to Dr. Rogers, the Vocational Expert, included an exertional limitation to light level work, restricted from a full range by such non-exertional limitations as: (1) an inability to ever operate foot controls; (2) an inability to more than occasionally stoop, crouch, kneel and crawl; (3) a need to avoid concentrated exposure to dust, fumes and gases; (4) a limitation to simple, repetitive tasks with an ability to maintain attention, concentration and pace for two-hour segments out of an eight-hour day in such an environment and to respond to supervisors and coworkers in such a setting; and (5) an inability to have more than casual or infrequent contact with supervisors and coworkers.[1]  (Tr. 68-69).  In response, Dr. Rogers reported that McKnight's past work as a restaurant host and data entry clerk could still be performed.  (Tr. 69-70).  The witness also identified other jobs such as press operator and inspector which could still be done. (Tr. 71).  The ALJ then asked Dr. Rogers whether an exertional limitation to light level work, restricted from a full range by: (1) an inability to ever bend, squat and crawl; (2) an inability to more than occasionally climb and reach overhead; (3) a need to avoid pushing, pulling and using foot controls; (4) a "moderate" limitation

_____

[1] These restrictions were consistent with the residual functional capacity assessment of the ALJ on an earlier application by the plaintiff.  (Tr. 98).

concerning exposure to temperature extremes, humidity, dust, fumes, chemicals and driving automobiles; and (5) an inability to sit for more than four hours, stand for more than two hours and walk for more than two hours with a need for a sit/stand option, would affect the aforementioned jobs.[2]  (Tr. 71-72).  The witness testified that the press operator and past hosting work would be eliminated.  (Tr. 72-73).  The inspector work could still be performed.[3]  (Tr. 72).  For the third hypothetical question, the ALJ combined the physical restrictions of the first question with such mental limitations as: (1) "moderate versus marked" restrictions in the ability to understand, remember and carry out detailed instructions, maintain attention and concentration for sustained periods, interact appropriately with the general public, accept instructions, respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.[4]  (Tr. 74-75).  The individual would retain the ability to perform the basic mental demands of unskilled work including handling simple instructions, sustaining attention and concentration for two-hour segments in an eight-hour day, interacting appropriately with coworkers and supervisors in a non-

---

[2]These physical restrictions came from Dr. Rita Egan.  (Tr. 529-531).  Dr. Egan was a treating physician and the ALJ found that her opinion was entitled to great weight. (Tr. 24).

[3]No mention was made of the data entry clerk position.

[4]These mental restrictions came from the opinions of the medical reviewers.  (Tr. 361-363, 421-423).

public setting where interactions were frequent and task-oriented, and she could adapt to stress in such an object-focused environment.[5] (Tr. 75). Dr. Rogers reported that such a person could still perform the previously cited jobs. (Tr. 75). Finally, the vocational expert was asked to consider the physical restrictions contained in the second hypothetical question along with such mental limitations as (1) "moderate to marked" restrictions concerning the ability to tolerate the stress and pressures of day-to-day employment and to respond appropriately to supervision, coworkers, and work pressures in a work setting; and (2) a "moderate" restriction of ability to deal with simple instructions and simple, repetitive tasks and to sustain attention and concentration towards performance of simple, repetitive tasks. (Tr. 76-77). Dr. Rogers indicated that the "moderate to marked" limitations would likely result in one being unable to maintain long-term employment. (Tr. 77). The ALJ relied upon the earlier testimony of Dr. Rogers to support the administrative decision.

The ALJ erred in evaluating McKnight's mental condition. Psychologist Jessica Huett examined the plaintiff and diagnosed a pain disorder due to psychological factors and medical issues, a major depressive disorder and an anxiety disorder. (Tr. 401). Huett indicated that the claimant would have "moderate to marked" restrictions concerning the ability to tolerate the stress and pressures of

_____

[5]The transcript states "frequent" instructions, but the ALJ specified "infrequent contact" in his ultimate residual functional capacity finding. (Tr. 22).

day-to-day employment and to respond appropriately to supervision, coworkers, and work pressures in a work setting and a "moderate" restriction of his ability to deal with simple instructions and simple, repetitive tasks and to sustain attention and concentration towards performance of simple, repetitive tasks.  (Tr. 401-402). These mental restrictions were given to the vocational expert in the fourth hypothetical question and would preclude long-term employment. (Tr. 76-77).  The ALJ rejected Huett's opinion as binding because he believed that her conclusions portrayed a much more severe mental condition than was supported by the objective evidence of record.  (Tr. 24).   However, the psychologist did report seriously impaired coping skills, gaps in insight, variable attention and concentration, a restrictive affect, pessimistic mood and skill deficits in interpersonal relationships.  (Tr. 400-401).  In Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989), the court stated that:

> a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment . . . consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine . . . .  In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of medical illness . . . .  When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of the professionals trained in the field of psychopathology.  The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

Blankenship, 874 F.2d at 1121.  Thus, the observations of Huett, made during her diagnostic interview, provide at least some objective support for the examiner's opinion in the less precise area of a mental impairment.

Furthermore, McKnight sought treatment for his mental problems at the Cumberland River Comprehensive Care Center.  (Tr. 406-420, 460-487, 525-528). Dr. Vassili Arkadiev, a Cumberland River staff psychiatrist, diagnosed a major depressive episode and rated the plaintiff's Global Assessment of Functioning (GAF) at 45 in  September of 2008.  (Tr. 409).  Such a GAF indicates the existence of "serious" psychological symptoms according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34.  Dr. Adam Wooten, another Cumberland River staff psychiatrist, indicated that the claimant was stable in June of 2009.  (Tr. 472).  Nevertheless, Dr. Wooten still diagnosed a mood disorder secondary to chronic pain and a major depressive disorder in August of 2009.  (Tr. 465).  The GAF rating was again 45. (Id.).  The "serious" psychological symptoms indicated by the GAF ratings of the treating source at Cumberland River arguably suggest mental problems consistent with Huett's finding.  Therefore, the ALJ's grounds for rejecting the examiner's opinion are questionable.

The ALJ ultimately relied upon the opinions of Psychologists Jan Jacobson and Ann Hess, the non-examining medical reviewers.  (Tr. 24).  The mental restrictions of the third hypothetical question were compatible with the limitations of

the reviewers. (Tr. 361-363, 421-423). Social Security Ruling (SSR) 96-6p indicates that the administrative regulations "provide progressively more rigorous tests for weighing opinions as the ties for the source of the opinion and the individual become weaker." See 20 C.F.R. § 416.927(d)(1), which states that "generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." An ALJ may rely upon the opinion of a non-examiner over that of an examining source when the non-examiner clearly states the reasons for his differing opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). In the present action, Jacobson indicated that Huett's opinion was consistent with the overall evidence and was entitled to "great weight insofar as moderate limitations are opined." (Tr. 363).[6] However, the reviewer did not explain why this opinion of the examining consultant was not entitled to full weight. Thus, the court finds the opinion of Jacobson insufficient to offset the opinion of Huett, the examining source. The ALJ should at least have sought the advice of a medical advisor who had reviewed the record and indicated reasons why the examiner's opinion was not well-supported. Therefore, a remand of the action for further consideration is required.

McKnight raises several other issues including the ALJ's treatment of his pain complaints and the credibility of his testimony. The plaintiff also raises issues

---

[6]Hess did not address Huett's opinion. (Tr. 423).

concerning evidence which was submitted to the Appeals Council and never seen by the ALJ.  (Tr. 532-582).  Since the action is already being remanded for further consideration of the claimant's mental condition, the undersigned has no need to reach these issues.

The undersigned concludes that the administrative decision should be reversed and remanded for further consideration.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 1st day of December, 2011.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**